## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

|  |  |  |
|---|---|---|
| **JESUS ERIAS ESCOVEDO, Jr.,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:12-CV-041-BL** |
| | § | **ECF** |
| | § | |
| **CAROLYN W. COLVIN,**[1] | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | **Assigned to U.S. Magistrate Judge** |

## MEMORANDUM OPINION AND ORDER

**THIS CASE** is before the court upon Plaintiff's complaint filed March 23, 2012, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on September 4, 2012 (Doc. 19) and Defendant filed a brief on October 3, 2012 (Doc. 20). The parties consented to having the United States magistrate judge conduct all further proceedings in this case on March 26, 2012 (Doc. 5) and April 19, 2013 (Doc. 22).

This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be reversed and that this matter should be remanded for further administrative action as described herein.

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security, effective February 14, 2013, and is therefore substituted as Defendant in this matter for Michael J. Astrue, per FED. R. CIV. P. 25(d)(1).

## I.   STATEMENT OF THE CASE

Plaintiff filed an application for supplemental security income benefits on June 10, 2010. Tr. 107.  Plaintiff's application was denied initially and upon reconsideration.  Tr. 61-70.  Plaintiff filed a Request for Hearing by Administrative Law Judge  ("ALJ") on June 10, 2010, and this case came for hearing before the ALJ on January 3, 2011.  Tr. 71, 29-55.  Plaintiff, represented by a non-attorney, appeared and testified in his own behalf.  Tr. 33-51.  A vocational expert ("VE") appeared and provided expert testimony. Tr. 52-54.  The ALJ issued an opinion that was unfavorable to Plaintiff on March 11, 2011. Tr. 10-27.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. Tr. 15.   The ALJ indicated that he had considered the complete medical history of the Plaintiff in making his decision.  *Id*.  The ALJ found that Plaintiff had not engaged in substantial gainful activity at any time since May 12, 2010, the application date.  Tr.  157   The ALJ found that Plaintiff has "severe" impairments including osteo-arthritis of the bilateral feet and status post arthrodesis of the bilateral feet.  *Id*.   The ALJ found that Plaintiff's nonsevere impairments include: anxiety disorder, not otherwise specified; major depressive disorder; and a pain disorder associated with both psychological factors and a medical condition.  *Id*.

In evaluating Plaintiff's mental impairments, the ALJ found that Plaintiff was mildly limited by such impairments in his activities of daily living; social functioning; and concentration, persistence, and pace.  Tr. 17.  The ALJ further found that Plaintiff has not experienced any episodes of decompensation of extended duration.  Tr. 18.  Having found that Plaintiff's mental impairments caused no more than "mild" limitations in the functional areas noted therein, the ALJ concluded that Plaintiff's mental impairments were not "severe" under the paragraph B criteria.

The ALJ found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1, Tr. 16.  The ALJ specifically referenced Sections 1.02, 1.03, and 1.06 of the Listings, noting that Plaintiff retained the ability to ambulate effectively, as described in Section 1.00 B(2)(b) of the Listings.  Tr. 18.   Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 18.   The ALJ noted Plaintiff's allegations regarding his symptoms and the limitations imposed therein. Tr. 19. The ALJ discussed Plaintiff's reports of his medical treatment and his activities of daily living and compared them with the objective medical evidence of record. Tr. 19-20.

The ALJ also addressed Plaintiff's mental impairments.  Tr. 20-21.  He noted that Plaintiff's treating physician had prescribed antidepressant medication, that Plaintiff had declined counseling, that the psychological consultative examiner opined that he had serious symptoms, and that the State agency medical consultants opined that Plaintiff had a severe mental impairment.  Tr. 21.   The ALJ found that Plaintiff was not fully credible, noting his lack of additional treatment and poor work history.  Tr. 21-22.

The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  Soc. Sec. Ruling 96-5p (July 2, 1996) ("SSR 96-5p"). The RFC assessment is based upon "*all* of the relevant evidence in the case record,"

including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations.  Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC.  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

The ALJ found that Plaintiff retained the RFC to perform the full range of work at the sedentary  exertional level. Tr. 22-23.  The ALJ specifically rejected the limitations suggested by Plaintiff's representative at the hearing.  Tr. 23.  The ALJ further found that Plaintiff could maintain such employment on a continuing and sustained basis. Tr. 18.  The ALJ, having considered such RFC, found that Plaintiff was unable to perform any of his past relevant work.   Tr. 22.  The ALJ noted that Plaintiff was a younger individual as defined by applicable regulations, with a limited education,  and having the ability to communicate in English.  Tr. 22-23.  The ALJ found that the transferability of job skills was not material to a determination of disability. Tr. 23.

The ALJ applied Rules 201.19 and 201.20 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the Grids") to direct a finding of "not disabled."  Tr. 23.  The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 23-24.

Plaintiff sought review of the hearing decision and order.  Tr. 9-11.  The Appeals Council issued an opinion denying review of the ALJ's hearing decision.   Tr. 3-8. The ALJ's decision, therefore, became the final decision of the Commissioner.

On March 23, 2012, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States district court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards.  *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)).  Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision.  *Masterson,* 309 F.3d at 272.  "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or SSI, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453.  In this case the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform other work which exists in significant numbers in the national economy. Tr. 23-24.

## III.   DISCUSSION

Plaintiff alleges that the ALJ erred in finding that he had no "severe" mental impairments at step 2 of the sequential evaluation process.   The ultimate issue is whether the ALJ's decision is supported by substantial evidence.   The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Under the Social Security Regulations, the severity of an impairment or impairments is considered at the second step of the five-step sequential analysis.   *See* 20 C.F.R. § 404.1520.   A claimant must show that he or she has a severe medical impairment before the claimant can be determined disabled.   20 C.F.R. § 404.1520(a)(4)(ii).   The regulations further provide that an impairment must significantly limit the person's ability to do basic work activities in order to be considered severe.   20 C.F.R. § 404.1520(c).   Thus,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Commissioner] will find that you do not have a severe impairment and are, therefore, not disabled.

*Id.*

The Supreme Court held that this "severity regulation" is valid on its face and "is not inconsistent with the statutory definition of disability." *Bowen v. Yuckert,* 482 U.S. 137, 148 (1987).

The Fifth Circuit has considered the severity regulation, both before and after the Supreme Court's decision in *Bowen v. Yuckert*.   In *Stone*, 752 F.2d 1099, the Court approved of an earlier construction of the severity regulation that set this standard for determining whether a claimant's impairment is severe:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

*Id.* at 1101 (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984).  In *Loza* the Court held

that the standard set forth in *Stone* remained the correct standard.  219 F.3d 378 at 392.  However,

the Commissioner may require a claimant to make a *de minimis* showing that her impairment is

severe enough to interfere with her ability to do work under this standard.  *Anthony v. Sullivan*, 954

F.2d 289, 293 n.5 (5th Cir. 1992).

      If the ALJ determines that the claimant has a medically determinable mental impairment, he

must specify the symptoms, signs, and laboratory findings that substantiate the presence of each

impairment.  20 C.F.R. §§ 404.1520a; 416.920a.  He is required to evaluate the degree of functional

loss resulting from Plaintiff's mental impairments as set forth in 20 C.F.R. §§ 404.1520a and

416.920a.  *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001).  The ALJ must evaluate the claimant's

limitations in four functional areas:  activities of daily living; social functioning; concentration,

persistence, or pace; and episodes of decompensation, the part "B" criteria.  A five-point scale is

used to rate the degree of limitation in the first three of those functional areas.  20 C.F.R. § 416.920a

(c)(1)-(4).  These four separate areas are deemed essential for work.  *Boyd*, 239 F. 3d at 705 (citing

20 C.F.R. § 404.1520a(b)(3)).  The written decision of the ALJ must incorporate pertinent findings

and conclusions based on the technique and must include a specific finding of the degree of

limitation in each of the functional areas described.  20 C.F.R. § 416.920a(e)(2).  The PRTF

represents one way in which such findings may be documented.  20 C.F.R. § 404.1520a(e).  After

the ALJ rates the degree of functional limitation resulting from any mental impairment(s), the ALJ

determines the severity of such impairment(s).  20 C.F.R. § 416.920a(d).  If the degree of functional

loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not

severe" at step 2 of the sequential evaluation process.  20 C.F.R. § 404.1520a(c)(1).  If the ALJ finds

that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the ALJ must then

determine if it meets or equals a listed mental disorder under 20 C.F.R. Pt. 404, Subpt. P, app. 1, 12.00-12.09 and 20 C.F.R. § 404.1520a(c)(2).  If the impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct an RFC assessment.  *Boyd*, 239 F.3d at 705.

The ALJ opinion demonstrates that the ALJ evaluated Plaintiff's mental impairments under Section 12.04 of the Listing of Impairments, addressing both the part B and part C criteria.  Tr. 17-23.  The ALJ noted Plaintiff's treatment with antidepressant medication by his physician and correctly noted that Plaintiff had not sought further treatment specifically for any mental impairments.  The ALJ discussed the observations and findings of Dr. Douglas Krug, the psychological consultative examiner, whose impressions included anxiety disorder, not otherwise specified; major depressive disorder; and a pain disorder associated with both psychological factors and a general medical condition.  Tr. 20-21.  The ALJ noted that Plaintiff was assessed Global Assessment of Functioning ("GAF")[2] score of 45[3] on Axis V upon examination.  *Id*.

The court notes that although the consultative examiner indicated that Plaintiff had a GAF score of 45, the GAF score in and of itself does not represent a medical opinion regarding any specific limitations imposed by Plaintiff's mental impairment(s).  Rather, it represents a tool [the scorer]  used in the course of his examination, diagnosis, and treatment.   In any case, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."  *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 241 (6th Cir. 2002).  The GAF is

---

[2]      The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32 ("DSM-IV").  This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome."  *Id*.

[3]      A GAF of 41 to 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

a diagnostic tool; a medical opinion as to a claimant's GAF is not automatically reflected in any RFC finding, nor does any particular GAF score necessarily correlate to specific limitations imposed by a claimant's mental impairment(s).

Nonetheless, the severity finding must be supported by evidence, and the claimant need only make a *de minimis* showing at step 2 of the sequential evaluation process, when impairments are evaluated for severity. The ALJ discounted the subjective allegations of the Plaintiff and heavily discounted the opinions of the consultative psychological examiner and the State agency medical consultants, with regard to the severity and limitations imposed by Plaintiff's mental impairments. While the ALJ pointed to Plaintiff's failure to seek further psychological treatment, the ALJ did not note Plaintiff's testimony of receiving indigent health care, and failing to seek various types of medical care because of lack of funds. The court accepts the ALJ's credibility determination with regard to the evaluation of Plaintiff's subjective complaints. However, the ALJ relies upon the paucity of evidence with regard to the limitations imposed by Plaintiff's mental impairments in finding such impairments not "severe." He also rejects the opinions of the psychological consultative examiner and the State agency medical consultants as to the limitations and severity of such impairments, despite the absence of other evidence addressing this issue.

The claimant has the burden to prove that he is disabled within the meaning of the Social Security Act. *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987). A physical or mental impairment is in turn defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The existence of an impairment does not in itself establish disability; a claimant is disabled only if he or she is "incapable of engaging in any substantial gainful activity." *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986). "The ALJ as

factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).  The task of weighing the evidence is the province of the ALJ.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  The relative weight to be given these pieces of evidence is within the ALJ's discretion.  *Id.*  The court does not find that the ALJ inappropriately weighed Plaintiff's subjective complaints.  However, the evidence of record including the opinions of the psychological consultative examiner and the State agency medical consultants are sufficient to meet the Plaintiff's burden at step 2, and the step 2 determination is not supported by substantial evidence in the record.

The court recognizes that procedural perfection is not required.  Nevertheless, because the ALJ found no non-exertional impairments, did not incorporate any limitations into the RFC reflecting Plaintiff's mental impairments, and applied the Grids to direct a finding of "not disabled," it is apparent that the error in evaluating the severity of Plaintiff's mental impairments is prejudicial.  Plaintiff has not conclusively established that he is entitled to benefits.  Therefore, remand for further administrative proceedings is appropriate in this matter.

The court finds that the ALJ erred, that the ALJ's opinion is not supported by substantial evidence, and that remand for further administrative action is required.  Upon remand, the ALJ shall further consider the severity of Plaintiff's mental impairments and the limitations imposed therein, further develop the record as needed, and determine Plaintiff's mental and physicals RFCs therein.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, the court finds that the Commissioner's decision is not supported by substantial evidence in the record and should be **REVERSED**, that this matter should be **REMANDED** for further administrative action; and that **JUDGMENT** should be entered in accordance therein.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** to the Commissioner for further administrative action, as described herein.

A judgment in accordance with this Memorandum Opinion and Order shall be entered accordingly.

**SO ORDERED**.

DATED this 9th  day of May 2013.

_____

**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**